Good morning. Counsel for appellees and everyone present, my name is Ben Rosenfeld. I'm counsel for Plaintiff's Appellants Kirsten Johnson et al., including her minor children. May it please the Court. I want to begin by reasserting that the video evidence in this case is our best evidence of the lack of probable cause and the false arrest and everything that devolved from that. It's video evidence from the defendant's own police video. It's what we call BWC or body-worn camera video. We presented a compilation of that which is unexpurgated. It unfolds in as close to real time as possible. It leaves nothing out. Defendants presented much the same video in the sort of total segments. We commend that to the Court and the clerks. We hope that you will review it thoroughly. It is akin to voluminous evidence exhibits under F.R.E. 1006. We could obviously have presented a bazillion individual segments. We chose not to do that, but the video is in the record. And from that, I believe a reasonable jury watching it could certainly find that probable cause was lacking in this case. Of necessity, I'm going to focus in on certain points and certain of our claims, but I think we've briefed everything thoroughly if I omit anything. Counsel, Judge Gould, if I could interject just to make sure in your argument you address an issue of concern to me, and that is this. My focus primarily is on qualified immunity. Even if we assume that you're correct that the officers lack probable cause, we have to deal with cases from the Supreme Court like Casella v. Hughes and White v. Pauley that indicated for qualified immunity there must be some sort of similarity in the case on which the Supreme Court has made statements. And they've said that you can't assert principles at a high level of generality. And the problem for me in this case, and just as one judge on the panel, is that I think it's clear beyond doubt you can't arrest a person without probable cause. But it's not clear to me whether or not there was probable cause here. And so in your argument, could you address, you should address the qualified immunity point. Yes, of course, Your Honor. I'll jump to that part of my presentation, and we do, of course, address it thoroughly in the briefing as well. So first, I'd like to observe that this was a calm scene. And under Mitchell v. Forsyth, where an official could be expected to know that his conduct would violate statutory or constitutional rights, he should be made to hesitate. This was not a situation in the sort of heartland of qualified immunity cases where police had to make split-second decisions. Ergo, we're trying to protect them from, or really protect the government as a whole for whom qualified immunity is sort of created from liability in those quickly unfolding circumstances. Here you had a situation where police actually didn't even restrain Ms. Johnson for 25 minutes before they precipitously arrested her, contrary to everything they had indicated up to that point, treating it really more as an investigative detention or terry stop, and then things quickly devolved from there. So they had time to investigate. They had time to hesitate. I think we cited a lot of cases that show that the constitutional rights violations here were clearly established. We went through a litany of those, and I won't rehash them. But the case is very akin to Rosenbaum v. Washoe County in the sense that the statutes at issue here are unambiguous and not susceptible to the reading that the county suggests. So, for example, arrests under 273A's felony provision for willful endangerment of children likely to create great bodily harm or death just fall absolutely far afield of, I mean those elements fall far afield of anything presented here, and Rosenbaum indicates to us that qualified immunity is unavailing in those circumstances. I cited a number of cases where the facts were dramatically worse than they were in this case, and the courts found qualified immunity was applicable, such as Rogers v. County of San Joaquin Ninth Circuit case that involved bottle rot, lack of age-appropriate toilet habits, malnourishment, an unsanitary home. There, still, the court didn't find qualified immunity. And the law is clear in this circuit under Boyd v. Benton County and other cases that the court should look to any decisional authority, not just circuit authority within that circuit, for clearly established law. And we cited cases, we cited district court cases, we cited cases from other circuits and other district courts. Very importantly here, though, there's another doctrine which is gaining momentum, I think you could say, in this court and other courts, which is the doctrine that where the rights violation is so obvious, qualified immunity does not obtain. So the standard is this, as recited recently by this court in Hines v. Youssef in 2019, some things are so obviously unlawful that they don't require detailed explanation, and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing. And Hines cites to Browder v. City of Albuquerque, which was a Tenth Circuit case. There are other cases, by the way, which help formulate that doctrine, which I did not cite. They include Wright v. Beck at 981 F. 3rd 719 in this circuit in 2020, and also Hernandez v. City of San Jose in this circuit in 2018 at 897 F. 3rd 1125. Wright v. Beck, by the way, says an official may have fair notice that conduct is unlawful even without a body of relevant case law if the violation is so obvious that no reasonable official would have engaged in such behavior. We have such circumstances here. I think this is the toughest part of the case. Clearly, this could have been handled differently. I think it's hard to disagree with you at that level. I guess the problem, though, is it's a civil suit. You've got to overcome the second prong of qualified immunity, and the situation was ambiguous or unusual. You have kids out at the park at night. The infant is with the father. The father is completely intoxicated. The infant is out with the father in a situation that, I mean, the father is no longer a plaintiff here, and I can understand why. There's some amount of alcohol involved. The behavior is odd, you know, talking about giving away a family dog in the night at Dolores Park, which is not a place that most parents would have their kids, you know, at night. And there's circumstances that when you look at it collectively, I think the officers seem to be concerned at least about the welfare of the children. And if children weren't involved, you would think this probably would have ended differently. So, I mean, in that situation, the officers are faced with what? Taking the husband and leaving Ms. Johnson there to somehow leave on her own when it's not clear that she has the full wherewithal to do that? I mean, it's an ambiguous situation. So even if they were mistaken, which they might have been, why doesn't qualified immunity attach given all those circumstances? Thank you, Your Honor. Well, for a number of reasons. I mean, first of all, again, it was a calm, slowly unfolding scene. And there is the obligation upon the officers to conduct reasonable investigation and also the standard that if probable cause dissipates over that time, as it surely did here, even if they had some reason to contact in the first place, then they have to let a person go. And here, all their behavior indicated that that was their process, not least because they didn't handcuff Ms. Johnson for 25 minutes, not least because they left an infant on her back. So to the extent that they may have thought that she presented some kind of felonious danger to her children, it would be incongruous for them to have left an infant, you know, the ostensible subject of their protection on her back for all of that time. Also, I think it's important to look at this in terms of the different sort of stages of it. So we have the stage in the park, but we also have the stage in the police station where they had originally told her that they were going to take her just to sort things out. They had three hours there before she was, more than three hours, before she was transported to county jail and booked. Within that time, she also had an ETOH report, or shortly after that ETOH report, you know, from jail showing that, you know, she had no alcohol in her system. I mean, we, of course, don't think there were indicia that she was drunk in the first place and that the whole thing falls apart from there, and certainly not dangerously drunk, which is the standard. So at the station, you know, they could have returned her children to her, which, of course, is what you want in the context where children are involved. I mean, that's the standard across the board involving CPS and any removal of children. You want to leave the children with a custodial parent, or in the absence of that, then, you know, a responsible adult with some relationship to the children. Here, it was sort of like wither goes the husband, goes the wife, and there was no individualized attention. I mean, she showed herself to be in, you know, making the best of terrible circumstances, very polite, very helpful, very responsive, while standing on her rights in some cases. The rational and reasonable thing to do would have been to, at least from the station, if not from the park after those 25 minutes, let her be with her children after releasing the husband. What do you make of, you know, some of the evasiveness, which is apparent in the video, you know, about her drinking and about where the husband was? Thank you, Your Honor. What I make of it is that it absolutely contradicts the notion that they had any indicia that she was drunk. She answered almost all of their questions and provided help and went so far as to subordinate her concerns for the welfare of her children by assuring them, even though she clearly didn't believe it, that they would be fine and the officers, you know, had their best interests at heart. You know, she was trying to calm the situation. You know, she even told one of the officers that the door was open. They left the door open of the squad car, and that officer said, you know, in so many words, we don't know what's going on here. So what I make of it is that it shows discernment. It shows the opposite of being intoxicated, along with the fact, by the way, that she was steady on her feet, her eyes weren't bloodshot, and as the district court itself found, her speech was fine. She wasn't slurring. You know, she was clear. Interestingly, defendants, you know, suggest that she had thick or slurred speech. So there's a contradiction even between the district court and the defendants, which just further highlights the fact that there was no probable cause to believe she was drunk, much less dangerously drunk. Counsel, Judge Gould, may I interject a question? Of course. As I understand it, there were two separate officers who said that they smelled alcohol on her breath, and that in and of itself isn't a violation, but it's one factor to be considered. Another point is she herself said that she had some alcohol, and she didn't admit to drinking an amount that in itself would be clearly intoxicating, but she did say she'd drank some alcohol. And then third, the van itself, at least from my view of it on the video, the interior is all jumbled up and things are not in an orderly manner. And when you take those factors and couple them, the fact that the car seats of the kids were not installed in the car properly at the time, does all that together raise enough of an inference of risk to the children to permit the arrest? No, Your Honor. And to take your points in order, first with respect to smelling alcohol on her breath, there were 11 officers on scene. Two of those 11, only two, reported smelling alcohol on her breath. And one of them didn't report that on scene, but only at his deposition much later. And he actually asked the first officer, or the lieutenant, not the first officer, is she 8-11, meaning drunk? And so his conclusion flowed from that. So there's really only one officer that claimed that at the scene, Officer Kirstie Barr. And as you observed, Your Honor, that does not make out a violation. I know we're not supposed to make slippery slope arguments, but there really is a slippery slope here. If she was arrestable simply because one, later two, derivative of the first out of 11 officers smelled alcohol on her breath, then police could literally arrest every person leaving a stadium and a sporting event, and under this case, or in these facts, take their children away too, if they had children. I mean, that really is the import of this. Right, but it's not the only fact. The alcohol on the breath is one fact, but it's part of a whole compilation of facts that led to this unusual circumstance that the officers walked into. There's a piling on here, Your Honor, and we deconstruct all of those facts, I think. There's all kinds of, and there are factual disputes, which mediate both against summary judgment on the merits and probable cause. Importantly, the reason that it's so important that the district court misrelied on Penghu is because Johnson is also entitled to the reasonable inferences, and when you ask, for example, what do I make of the fact that she chose not to answer all the questions, what I make of it is that she was standing on her rights and being very discerning, and that's the reasonable inference. So the district court has construed all of these inferences against my client, which is contrary to the summary judgment standard. And if I may, I know I'm over time, but I wanted to finish responding to Judge Gould's questions, if that's all right. Judge Gould, you pointed out that she admitted she had had something to drink. Yes, more than three hours earlier, in very small quantity, with food, and again, she didn't give off indicia of being drunk, and a person who's drunk can't really pick and choose what symptoms they're going to exhibit. They can't choose, oh, I'm going to have bloodshot eyes, but be steady on my feet, or I'm going to have slurred speech, but I'm going to understand and respond. Here, she was steady on her feet. She didn't have bloodshot, watery eyes. The district court, at least, found that her speech was clear and well-initiated. They didn't preserve any, they didn't make, the police did not make any effort to determine how much she had to drink, but it was a non-intoxicating amount many hours earlier. And she was, Ms. Johnson was very adamant on the scene in telling Officer Barr that she was not intoxicated. Finally, Your Honor, you raised the question of the state of the van and the car seats. Remember, this was a playhouse and mobile home, essentially, for five children in a park, you know, after a day of sightseeing San Francisco. Of course the van was going to be in some disarray. It was not nearly in the disarray that officers alleged as we took pains to show and deconstruct. And with respect to the car seats, they had to be moved in order to accommodate the children, but they were all there and accounted for. Ms. Johnson repeatedly proffered her help, and they asked for her help, which is kind of astonishing too, and she gave it. And the police, of course, did transport the children in the van and finally came around, the defendants finally came around to admitting the car seats were adequate. Thank you. Thank you. You've exceeded your time. We'll give you two minutes for a vote on. Thank you, Your Honor. May I proceed? Yes, please. Good morning, Your Honors. May it please the Court. My name is Caitlin Murphy on behalf of Appellees. The District Court correctly concluded that this is a case that could be resolved at summary judgment because the undisputed material facts show there was probable cause to arrest Ms. Johnson. Specifically, there was probable cause to arrest her for public intoxication, child endangerment, and resisting arrest. The reason those material facts are undisputed is because they're all captured on the body-worn camera videos from the officers who responded to the scene. Well, Counsel, what are we to do with the contradictory evidence from Ms. Johnson that she was not intoxicated and that there was no odor of alcohol on her breath? What do we do with that? Does that raise a dispute of material fact? It does not for two reasons. First, I don't believe Ms. Johnson has presented any evidence to suggest affirmatively there was no smell of alcohol on her breath. What the video and the undisputed evidence show is that Ms. Johnson admitted she had been drinking but refused to tell the officers when she had started drinking, that Officer Barr, the first officer to interact with Ms. Johnson, indicated that she smelled alcohol on Ms. Johnson's breath  which Ms. Johnson concedes her children use as a playhouse. She found several open bottles of alcohol within reach of children in the space they used as a playhouse. Those facts are undisputed from the body-worn camera. But that doesn't mean there were two adults in the vehicle, so that doesn't necessarily mean that that's not undisputed evidence that Ms. Johnson was under the influence, is it? Well, it's undisputed that Ms. Johnson admitted she was drinking and that she refused to tell the officers how much. The video shows that even to get the information the officers eventually got about her drinking, it took multiple attempts, that her responses were evasive. That shows that she was under the influence. How does that show she was under the influence? Because she wouldn't answer the question? Because she admitted she had been drinking, and the fact that there was alcohol in a space that her children were using as a playhouse shows that not only had she been drinking, but she was intoxicated to a point where drinking was affecting her ability to care for her children. In other words, had she not been intoxicated, she might not have left open bottles of alcohol in a place she acknowledges her children use as a playhouse. I think the age of the children in this case is particularly important. There's five children, all under the ages of nine, ten months, two years, four years, six years, and nine years old. So these aren't children of an age who are going to be able to discern, this is a bottle I shouldn't open and drink from. The combination of Ms. Johnson's admissions about her alcohol consumption and her behavior suggests that her conduct met the criminal definition or at the very least gave officers probable cause that she met those. Can I ask you, Judge Gould was asking about qualified immunity. If your clients do get qualified immunity on the federal claims, what happens to the state claims? There's a number of different state claims in here, and if I were to conclude that there was no probable cause but that that was not clearly established, what then happens with the state claims? Yes, Your Honor. A finding in favor of defendants on probable cause is sufficient but not necessary to affirm the district court judgment in its entirety. It might be the tidiest way to reach an order, but there is sufficient evidence to determine that each of the causes of action in this case have not been met regardless of how the court rules on probable cause. For the federal causes, as the court recognizes, qualified immunity is an independent basis. For the state law causes of action, there are independent reasons defined in favor of defendants at summary judgment. So, for example, for Ms. Johnson's trespass to Chattel's claim, she failed to adequately allege that claim in her government claim, which is a necessary requirement, an adequate government claim under the Government Claims Act of California statute. Similarly, a Bain Act claim requires not just an underlying constitutional violation but a specific intent element above that constitutional violation. As put forward in our answering brief and also recognized by the papers before the district court, there's insufficient evidence of that additional specific intent that would be required. What about wrongful arrest and negligence? I mean, if you were to conclude that there was no probable cause but that the officers were entitled to qualified immunity on the federal claims, what about the state law wrongful arrest and negligence claims? In order to reach that conclusion, the court would have to find that there was no probable cause for each of the three underlying offenses, not just the two that were addressed in the district court's order. And I do think there is sufficient evidence here to find that the officers' conduct was not negligent. In other words, they weren't breaching a duty because their conduct was protecting the children under the circumstances, separate from whether or not there was sufficient probable cause for Ms. Johnson to be arrested for a child endangerment. So, in other words, the officers' duties to protect the children is independent from whether or not Ms. Johnson exhibited symptoms sufficient that there was probable cause to arrest her. How about the state law wrongful arrest? It would rise and fall under the same standard as the negligence claim, Your Honor. Counsel, let me interject a question for you. I'm sort of trying to keep an open mind throughout the argument and hearing what my colleagues have to say, but I think I'm inclined to be with you on the probable cause issue in the sense that I think there's qualified immunity on that claim based on the totality of circumstances. But I am concerned that the issue that Judge Press raises as to whether on some of these state law claims there may be an issue of fact that shouldn't have been disposed of by summary judgment. So how would you address that? To respond to Your Honor's points, I would say that the two points, if I may take them in turn. The first is that many of the facts on which Ms. Johnson relies to show a dispute of probable cause, you'll notice from her briefing are cited to her deposition testimony, not to the video. The reason that's material is that the totality of circumstances inquiry considers the information the officers had available to them at the time. So, for example, in her brief, Ms. Johnson notes that she had been drinking, I think, something like 6 or 6.30 in the evening where the arrest occurred after 7. That's not information she provided to the officers, and, in fact, when they asked her when she started drinking, she refused to answer. So that's the first part of the inquiry is that the only relevant facts are the one the officers had at the time, as opposed to what Ms. Johnson later responded in her deposition. The second is to the extent that the inquiry revolves around an interpretation of the facts that are available, the court's decision here is governed by the Supreme Court's decision in Westby. That's a 2018 decision where the court found that probable cause does not require that officers rule out innocent explanations for the conduct. In that case, the Supreme Court instructed the lower court or found that it erred because it removed from its probable cause inquiry facts where there was a reasonable or an innocent explanation for the conduct, instead finding that the relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular non-criminal conduct, including the plausibility of the alternative explanations for the behavior. And in Westby, the court used that information not just to lay out a standard, but actually to find that summary judgment in favor of the defendants on a probable cause inquiry was appropriate. To what extent is Ms. Johnson responsible for the actions of her husband? Because his conduct was obviously much more severe. And the timing of the arrest here was not at the beginning of this when she is being evasive, and I agree with you that she was being evasive. But then there's another 20 minutes that go along, and it doesn't appear from the video that she's all that intoxicated. But what seems to precipitate the arrest is the arrest of her husband in the struggle on the basketball court, and then the officers returning to her. And so if you put two and two together, it seems like the officers are associating the two. And was that permissible to do? It certainly would be impermissible to arrest Ms. Johnson solely because of her husband's behavior, and I don't think anyone here today suggests that her husband wasn't sufficiently intoxicated that his arrest was appropriate. But the reason his inability to serve as a caretaker for his children comes into play in this inquiry is because Ms. Johnson and her partner were in an unfamiliar city with five children. They had no outside grandparents or third parties who were sharing responsibilities for ensuring the welfare and safety of their children. So to the extent Ms. Johnson's spouse's behavior is intoxication took him out of the equation as a person who would have been able to support her in providing for the care, welfare, and safety of her children. The officers had to assess whether or not Ms. Johnson on her own had the ability to care for five children under the age of 10, including children under a year old. Counsel, I'm back to my earlier question. I think there have been several Supreme Court cases which are favorable to your position on the probable cause issue. I don't know if I remember the case names, but I thought one had the name Lane in it. But the basic principle the Supreme Court established was that probable cause does not mean certainty of cause. It doesn't mean certainty that she was intoxicated. It just means there's enough to make it probable to permit an arrest. And so I would give you all that for sake of argument, but still, how does that resolve the state law claims when it's on summary judgment and all inferences have to be given to Ms. Johnson? The reason that that Supreme Court standard is sufficient to resolve all the state law claims is because I don't think there's a dispute between the parties. If the district court properly found there was probable cause to arrest Ms. Johnson, that's sufficient to resolve her remaining claims, including the state law claims. So, for example, the negligent claims we discussed earlier, probable cause for an arrest is a defense to the negligence claim per se. To the extent that the court affirms the district court's ruling on probable cause, it's sufficient to address all of the portions of Ms. Johnson's motion related to the summary judgment standard. There's still the separate side issue about disqualification, which becomes a non-issue if the judgment is affirmed. Wait a second, though. On probable cause, if we affirm the court based on qualified immunity without reaching probable cause in itself, without deciding that issue, then why would that be dispositive of the state law claims? There are two prongs of qualified immunity the court could address. Of course, the first is whether or not there was an underlying constitutional violation. To the extent the court rules in favor of defendants for qualified immunity on that first prong, that would be sufficient to address all that. What about just the second? The Supreme Court, I thought it was on a case called Saucier, S-A-U-C-I-E-R, said specifically that courts don't have to address both prongs. They can just go to the second prong on qualified immunity. That's correct, Your Honor. If the court chose only to address the second prong of qualified immunity, it would still need to do an individualized inquiry for each of the remaining claims to determine whether or not there was sufficient factual basis to grant defendants' motion, given the de novo standard of review. For the facts in the record and for the reasons presented in defendant's answering brief, the court should still affirm the district court's ruling, even if on that alternative basis. But in that case, I mean, there would only be state law claims left in this. It's not – that would be a question of whether to exercise supplemental jurisdiction at that point if the federal claims are out. I mean, this case began in state court, right, and then it came up here. If there's only state law claims left in it, it could potentially go back to state court. That's correct, Your Honor. It is a discretionary decision, and I would submit it would be more efficient in this case for the court to consider the underlying state claims, because there is sufficient evidence to grant summary judgment in favor of defendants, not just as to the federal claims, but also as to the underlying state claims. So to the extent the order would affirm the district court's ruling in its entirety, meaning judgment would be appropriate in favor of defendants, that appears a more efficient use of judicial resources than remanding the state claims and simply disowns it. Counsel, you may be right on the side of it would be more efficient to be totally done with the case and not have it go back to the state court. But aren't there important policy issues here in these state law claims that are of a type that really our federal court shouldn't be trying to rule on in the first instance that can go through the state courts and up to the state Supreme Court? Respectfully, I don't believe so, Your Honor. I think the state court questions here are pretty routine and run of the mill, while the circumstances in every probable cause case are unique. There's nothing about these facts that are so extraordinary that they would require an appeal to the California Supreme Court to resolve an unresolved issue or a matter of policy. Thank you. All right, thank you, counsel. Rebuttal? Let's have two minutes on the clock. Thank you, Your Honor. Utilizing the time the court has generously afforded me for rebuttal in responding to counsel's points, first of all, counsel said that in order to dispose of the state law claims, the court would have to find that there was no probable cause. That's not true. The court would have to find that there's no probable cause as a matter of law, but that's not this court's task, and it wasn't the district court's task. There are disputed facts here, and the cases are legion that probable cause is for a jury, especially on those disputed facts. So it's for the jury or the trier, not for the judge, and this court does not need to opine whether there was or wasn't probable cause, but rather whether a reasonable jury could find that there was no probable cause. And so I ask the court and I ask Judge Gould, please look closely at our briefing. I commend that analysis to the court. It is very detailed. Also, with respect to that inquiry, I just want to highlight the analyses of McKenzie v. Lamb in this court and Gasho v. United States in this court. McKenzie says mere suspicion, common rumor, or even strong reasons to suspect are not enough. And Gasho says probable cause is lacking if the circumstances relied on are susceptible to a variety of credible interpretations not necessarily compatible with nefarious activities. That is certainly the case here. Secondly, counsel said that it's undisputed that there were bottles of alcohol where the children played. That's not true. That is disputed. In fact, I submit it's demonstrated beyond cavil that those bottles were in the adult part of the van, in the driver's area of the van, not where the children played. And we showed video of that. I addressed that in the reply. Also, young children don't go around swigging alcohol, and these children were closely supervised by Ms. Johnson. As the video makes very, very clear, she is absolutely preoccupied with her children as a good mother from start to finish. Fourth, we have a prolonged detention claim, which is essentially a false imprisonment claim in this case. So she was arrested and held on five separate felony counts of 273A, utterly beyond the pale and unsupported by the facts in this case. All right. Thank you, counsel. You've exceeded your time once again. All right, thank you to both counsel. The case just argued is submitted for decision by the court.
judges: GOULD, RAWLINSON, BRESS